UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INTEGRAL DEVELOPMENT CORPORATION**,<br><br>*Plaintiff*,<br><br>v.<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION**, *as Receiver for First Republic Bank*,<br><br>*Defendant.* | Case No. 1:24-cv-01528-RCL |

**MEMORANDUM OPINION**

This case concerns the repudiation of a contract by the defendant, the Federal Deposit Insurance Corporation ("the FDIC"), pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). The plaintiff, Integral Development Corp. ("Integral"), sued the FDIC in its capacity as receiver for First Republic Bank ("FRB") following the FDIC's repudiation of a services contract between Integral and FRB. Before the Court is the FDIC's Motion to Dismiss the Complaint [ECF No. 8] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court will **GRANT** the FDIC's motion and **DISMISS** Integral's Complaint.

**I.    BACKGROUND**

**A.  Statutory Background**

"FIRREA was enacted in 1989 in the wake of the savings and loan crisis 'to enable the FDIC . . . to expeditiously wind up the affairs of literally hundreds of failed financial institutions

1

throughout the country.'" *MBIA Ins. Corp. v. F.D.I.C.*, 708 F.3d 234, 236 (D.C. Cir. 2013) (quoting *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1398 (D.C. Cir. 1995)).  To that end, FIRREA allows the FDIC to accept appointment as receiver for any insured depository institution and gives the FDIC "wide-ranging powers to consolidate and liquidate those institutions." *Nashville Lodging Co. v. Resol. Tr. Corp.*, 59 F.3d 236, 241 (D.C. Cir. 1995).  The statute provides that:

> [T]he conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—
>
> (A) to which such institution is a party;
>
> (B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
>
> (C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

12 U.S.C. § 1821(e)(1).  The FDIC, acting as receiver, is liable to the non-breaching parties for damages resulting from its repudiation of contracts, but its liability is limited to "actual direct compensatory damages."  *Id.*

FIRREA explicitly excludes damages for lost profits or opportunity from the statutory definition of "actual direct compensatory damages."  *Id.* § 1821(e)(3)(B).  By doing so, "Congress appears . . . to have wished to distinguish between those damages which can be thought to make one whole and those that are designed to go somewhat further and put a plaintiff securely in a financial position he or she would have occupied but for the breach."  *NCB Mgmt. Servs., Inc. v. F.D.I.C*, 843 F. Supp. 2d 62, 69 (D.D.C. 2012) (quoting *Office & Professional Employees International Union, Local 2 v. F.D.I.C.*, 27 F.3d 598, 604 (D.C. Cir. 1994)).  Accordingly, FIRREA prevents a plaintiff from recovering expectation or liquidated damages.

*Id.* "In the end, a plaintiff 'cannot recover damages to put it in the same position it would have occupied but for the breach.'" *Id.* (quoting *MCI Commc'ns Servs., Inc. v. F.D.I.C.*, 808 F. Supp. 2d 24, 33 (D.D.C. 2011)).

The FDIC pays its obligations through an administrative claims process, which requires the FDIC to publish and mail notice to the failed institution's creditors, setting "a date by which claims must be presented, not less than 90 days after publication." *BHC Interim Funding II, L.P. v. F.D.I.C.*, 851 F. Supp. 2d 131, 133 (D.D.C. 2012) (quoting *Freeman*, 56 F.3d at 1399) (internal quotation marks omitted). After a claim is filed, the FDIC then has 180 days to decide whether to pay its obligation or disallow it. *Id.* If the FDIC denies the claim, the claimant may seek judicial review. *Id.* (citing 12 U.S.C. § 1821(d)(13)(D)). A claim must be presented to the FDIC before a court can have jurisdiction over it because "FIRREA is strict in its demand that claimants first obtain an administrative determination." *Id.* (citing *Office & Professional Employees. International Union, Local 2 v. F.D.I.C.*, 962 F.2d 64, 65 (D.C. Cir. 1992)) (internal quotation marks omitted).

B. **Factual and Procedural History**

Plaintiff Integral is a leader in software-as-a-service ("SaaS") technology that allows users to connect to and use cloud-based apps over the internet. Compl. ¶ 2. Integral offers a SaaS platform with a subscription-based model and also provides digital currency technology to over 200 financial institutions. *Id.* ¶¶ 2–3.

On November 4, 2022, Integral and FRB entered into a Masters Services Terms and Conditions contract (the "Service Agreement"). Def.'s Mot. to Dismiss Compl. at 2, ECF No. 8-1 ("Def.'s Mot."). Under the Service Agreement, in exchange for FRB's monthly payment, Integral would provide software licensing and related services for a three-year term—through

October 25, 2025—with automatic renewal. *Id.* However, on May 1, 2023, the California Department of Financial Protection and Innovation closed FRB, and the FDIC was appointed receiver. *Id.* On that same day, the FDIC entered into a Purchase and Assumption Agreement with JPMorgan Chase Bank, N.A. ("Chase") under which Chase acquired FRB assets and liabilities, including its obligations to Integral under the Service Agreement. Compl. ¶ 7. But Chase ultimately elected to return the Service Agreement to the FDIC, and on January 12, 2024, Integral received notice of Chase's decision putting the Service Agreement back under the FDIC's obligation. *Id.* ¶¶ 7–8.

On January 31, 2024, Integral submitted its administrative proof of claim to the FDIC, requesting $393,696. Compl. ¶ 6. On February 24, 2024, the FDIC notified Integral in writing that it elected to repudiate the Service Agreement pursuant to 12 U.S.C. § 1821(e). *Id.* ¶ 7; *see also* Ex. E to Def.'s Mot. at 36, ECF No. 8-3.

Then, on March 8, 2024, the FDIC sent a letter to Integral requesting additional information about its administrative proof of claim. Compl. ¶ 10. On March 15, 2024, Integral responded with a letter showing the monthly fees owed by FRB to Integral through October 25, 2025 (the remainder of the term of the Service Agreement) and informed the FDIC that it had never received the February 24 repudiation letter. *Id.* ¶ 11. On March 29, 2024, the FDIC sent another letter to Integral disallowing its administrative claim and upholding the repudiation of the Service Agreement. *Id.* ¶ 12. The letter stated that if Integral disagreed with the repudiation, it was entitled under 12 U.S.C. § 1821(d)(6) to file suit within sixty days of the date of the disallowance letter. *Id.* ¶ 13.

Integral subsequently filed its complaint within the sixty-day period on May 23, 2024. *Id.* ¶ 21. Count I of the Complaint alleges that the FDIC is liable for the amount of monthly fees

remaining on the Service Agreement at the time of FRB's failure.  *Id.* ¶ 15.  Count II alleges that Integral is entitled to the pro rata value of its sunk costs related to the Service Agreement, totaling $400,000.  *Id.* ¶¶ 17–20.  Integral also seeks an award of attorneys' fees.  *Id.* ¶ 21.  On September 27, 2024, the FDIC filed its Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) for Count I and Rule 12(b)(1) for Count II.  Def.'s Mot. at 1.  Integral filed an Opposition to the FDIC's Motion to Dismiss on October 11, 2024.  Mem. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 10 ("Pl.'s Opp'n").  The FDIC filed a Reply to Integral's Memorandum on November 1, 2024.  Reply in Opp'n to Pl.'s Mem, ECF No. 15 ("Def.'s Reply").  The Motion to Dismiss is now ripe for this Court's review.

## II.     LEGAL STANDARD

### C.  Motion to Dismiss Under Rule 12(b)(1)

When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to hear" the case.  *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.  *Id.* at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed. 1987)) (internal quotation marks omitted).  In deciding a 12(b)(1) motion, this Court "may consider such materials outside the pleadings as it deems appropriate to resolve the

question whether it has jurisdiction in the case." *Id.* at 14 (quoting *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### D. Motion to Dismiss Under Rule 12(b)(6)

A party may file a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard is not a probability requirement but asks for more than a sheer possibility that a defendant's conduct was improper. *Id.* When evaluating a defendant's Rule 12(b)(6) motion, the Court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Border v. Nat'l Real Est. Advisors*, 453 F. Supp. 3d 249, 252 (D.D.C. 2020) (Lamberth, J.) (citing *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)) (internal quotation marks omitted). The court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Id.* (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)) (internal quotation marks omitted).

### III.   DISCUSSION

### A. Integral Fails to Establish a Claim for "Actual Direct Compensatory Damages," as is Required to Recover Under FIRREA

In Count I, Integral seeks the amount of monthly fees remaining on the Service Agreement at the time FRB failed, totaling $393,000. Compl. ¶ 15. The FDIC argues that this

relief is barred because FIRREA only allows recovery for "actual direct compensatory damages." Def.'s Mot. at 5. The question therefore is whether remaining monthly fees, which FRB would have paid Integral had the contract been performed, count as actual direct compensatory damages under FIRREA.

Courts in this District have applied the standard from a Ninth Circuit case, *ALLTEL Information Service, Inc. v. F.D.I.C.*, 194 F.3d 1036 (9th Cir. 1999), when analyzing what qualifies as "actual direct compensatory damages." *See MCI Commc'n Servs.*, 808 F. Supp. 2d at 29 (Berman Jackson, J.) (adopting *ALLTEL*). In *ALLTEL*, the claimant sought a monthly fee on the remaining fifty-four months of the contract, but the Ninth Circuit denied that relief—characterizing monthly fees as "future profits" that "would put ALLTEL in the financial position it would have occupied but for the breach." *ALLTEL*, 194 F.3d at 1041. The court also explained that even if the contracts provided that the monthly payments were owed for the full term of the agreement, such damages would be akin to liquidated damages, which would "constitute an estimate of what ALLTEL would have received had the Agreements been performed"—a type of relief specifically barred by FIRREA. *Id.* at 1043.

Here, for substantially the same reasons as in *ALLTEL*, Integral fails to claim "actual direct compensatory damages" under FIRREA. Integral seeks $393,000 in damages comprised of the unearned monthly fees for the remaining term of the Service Agreement for services it never performed. Indeed, to support its proof of claim, Integral submitted a spreadsheet which seeks twenty-four monthly payments in the amount of $16,404 each for the period of November 2023 (the date of repudiation) through October 2025 (the last date on the Service Agreement). But as the ALLTEL court explained, remaining monthly fees under a contract are not recoverable under FIRREA because they estimate what the claimant would have received had the contract

been performed. Here, Integral seeks to recover exactly the type of expectation damages that the *ALLTEL* Court held are precluded by the express language of section 1821(e). The Court adopts that reasoning here and will accordingly dismiss Count I for failure to state a claim for relief under FIRREA.

### B. This Court Does Not Have Subject-Matter Jurisdiction Over Count II Because Integral Failed to Exhaust its Administrative Remedies

Integral fails to establish subject-matter jurisdiction over the sunk costs it seeks in Count II, so the Court will grant the FDIC's Rule 12(b)(1) motion. These "sunk costs," which Integral characterizes as "reliance damages," are comprised of "front-loaded expenses" Integral incurred "at the commencement of the provision of services to [FRB]" by employing "the full time equivalent of four employees." Compl. ¶ 19; Pl.'s Opp'n at 26. Specifically, Integral values these costs at $2,000 each per day for sixty days, covering payment for design work, server-side work, user interface creation, quality assurance, and other testing. Compl. ¶ 19. When FRB failed, two-and-a-half years remained on the Service Agreement, so Integral pro-rated these sunk costs to total $400,000. *Id.* ¶ 20.

FIRREA generally limits a court's jurisdiction to review creditors' claims unless the claim has first been administratively exhausted with the FDIC. *Westberg v. F.D.I.C.*, 741 F.3d 1301, 1303 (D.C. Cir. 2014); *see also* § 1821(d)(6)(A); § 1821(d)(13)(D). A party seeking damages for the repudiation of a contract must first file a "proof of claim" with the FDIC requesting the relevant damages. *Winkal Mgmt., LLC v. F.D.I.C.*, 288 F. Supp. 3d 33, 45 (D.D.C. 2017). If a complaint "alleges entirely new legal theories that are different than those reflected in the administrative proof of claim, the Court is without subject matter jurisdiction to consider the new causes of action" because these new theories have not gone through FIRREA's exhaustion

requirements. *Jahn v. F.D.I.C.*, 828 F. Supp. 2d 305, 316 (D.D.C. 2011); *see also Winkal Mgmt., LLC*, 288 F. Supp. 3d at 45 (dismissing claim for failure to exhaust because the complaint asserted a new category of damages on a new claim not identified in the proof of claim to the FDIC).

Here, Integral failed to administratively exhaust its claim for Count II, because Integral's proof of claim and its communications with the FDIC only mention the $393,696 in damages claimed in Count I for future monthly fees. The proof of claim makes no mention of the $400,000 Integral is seeking in Count II for various front-loaded sunk costs. *See* FDIC Proof of Claim at 2, ECF No. 10-3. Furthermore, in response to the FDIC's letter requesting an explanation for Integral's claim, Integral focused solely on its claim for monthly fees, with no mention of any reliance damages or front-loaded sunk costs. Ex. E, Def.'s Mot. to Dismiss, ECF No. 8-8. In short, nowhere in the exhibits can the Court locate any mention of the alleged $400,000 in sunk cost damages. Without any proof that the FDIC was put on notice of the $400,000 that Integral was seeking, Integral cannot satisfy the *Westberg* exhaustion standard.

Integral argues that the Count II sunk costs theory is merely a new *issue*, not a new *claim*, and that there is no explicit issue exhaustion requirement in FIRREA. Pl.'s Opp'n at 22–26, 28. However, this is a mischaracterization by Integral. The sunk cost damages that Integral seeks are based on an entirely separate claim of damages, resting on different legal theories. The sunk costs are not baked into the monthly fees Integral sought in Count I—rather, the sunk costs appear to be a separate category of damages, so Integral needed to give notice to the FDIC in its proof of claim. Therefore, the Court is without subject-matter jurisdiction, and Integral's claim must be dismissed.

9

The FDIC also claims that Count II fails to allege a plausible claim for "actual direct compensatory damages." Def.'s Mot. at 11. The Court will not discuss this argument because Count II is dismissed for lack of subject-matter jurisdiction.

### C. Attorneys' Fees

Integral also sought attorneys' fees. Compl. at 8. The FDIC argues that Integral has no basis to recover attorneys' fees because such fees are barred by the American Rule, which requires each side of the litigation to pay their own attorneys' fees, and that FIRREA bars awarding attorneys' fees as an "impermissible penalty." Def.'s Mot. at 11–12 (first citing *Monrad v.* FDIC, 62 F.3d 1169, 1175 (9th Cir. 1994); then citing *Modzelewski v. Resol. Tr. Corp.*, 14 F.3d 1374, 1379 (9th Cir. 1994); and then citing 12 U.S.C. § 1825(b)(3)). The FDIC requests this Court to dismiss, or if more appropriate, strike Integral's request for attorneys' fees. Def.'s Reply at 6.

The FDIC is correct that attorneys' fees cannot be awarded here. Attorneys' fees can be considered a penalty, s*ee Chi. & N.W. Ry. Co. v. Nye-Schneider-Fowler Co.*, 260 U.S. 35, 44 (1922), and Section 1825 of FIRREA states that the FDIC "shall not be liable for *any* amounts in the nature of penalties or fines," 12 U.S.C. § 1825(b)(3) (emphasis added). "Read naturally, the word 'any' has an expansive meaning" that would include attorneys' fees. *United States v. Gonzales*, 520 U.S. 1, 5 (1997). Therefore, the FDIC cannot be liable for Integral's attorneys' fees, so the prayer for attorneys' fees will be struck.

### IV.   CONCLUSION

For the foregoing reasons, the Court will **GRANT** the Defendant's Motion to Dismiss. Integral fails to state a plausible claim for "actual direct compensatory damages" under FIRREA for Count I, so the FDIC's 12(b)(6) motion shall be granted. For Count II, Integral failed to

exhaust its administrative remedies as to the $400,000 of sunk costs it claims, so the Court is without subject-matter jurisdiction and the FDIC's 12(b)(1) motion shall be granted. Integral's claim for attorneys' fees shall be struck.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 7-29-25

Royce C. Lamberth
U.S. District Judge